**Malcolm GRAY, III, Petitioner,**

**v.**

**James ROSE, etc., et al., Respondents.**

**Civ. A. No. 3:83–0007.**

United States District Court,
M.D. Tennessee,
Nashville Division.

April 17, 1985.

Malcolm Gray, pro se.

John F. Southworth, Jr., Asst. Atty. Gen., Nashville, Tenn., for respondents.

## MEMORANDA OPINIONS, FINDING, CONCLUSIONS, ORDER AND CERTIFICATE OF PROBABLE CAUSE

NEESE, Senior District Judge, Sitting by Designation and Assignment.

The United States Court of Appeals for the Sixth Circuit directed this Court: (1) to consider an amended petition for the federal writ of habeas corpus, a response thereto by the respondents, and the record of the proceedings in the state courts; (2) either to accept the findings-of-fact made by the state court(s) or determine its own findings-of-fact under 28 U.S.C. § 2254(d); and (3) then to resolve the remaining legal issues by applying the controlling legal-principles underlying each claim to those facts. Mandate of September 7, 1984 in *Malcolm Gray, III,* petitioner-appellant, v. *Attorney General for the State of Tennessee; and James Rose, Warden,* respondents-appellees, order of August 16, 1984 742 F.2d 1455. An amended petition, a response thereto, and the pertinent portions of the state-record herein having been filed, the Court proceeds in accordance with such mandate:

### I.

### A.

In his amended-petition, the applicant Mr. Malcolm Gray, III deletes all grounds urged originally except for two. First, Mr. Gray contends that the admission into evidence of his confession violated his privilege against compulsory self-incrimination and his right to the assistance of counsel, Constitution, Fifth Amendment. A lengthy evidentiary hearing was held pretrial on the merits of the factual issues relevant to the petitioner's motion to suppress such confession; from the evidence adduced at such hearing, the Court of Criminal Appeals of Tennessee, as is evidenced by its written opinion, found

\* \* \* that when Gray was accosted by the officers at Fort Campbell he was advised of his rights and questioned about his whereabouts on the night of the murder. He denied he was in Clarksville. He willingly accompanied the officers to the justice complex in Clarksville where he was again advised of his rights and informed that he was going to be interrogated about the homicide. He informed the officers he wished to call his attorney before answering any questions. The interrogation ceased. The appellant was allowed to call his attorney who was in Nashville and was informed a lineup would be held the next day. The attorney was present at that lineup. When the appellant Gray was not identified the officers informed the attorney that their investigation revealed implication of Gray in the crime. The attorney then advised Gray to cooperate with the officials. It was the attorney's opinion that if Gray was not involved he should assist the officers in explaining circumstances that had pointed to his involvement. The attorney then testified he had to return to Nashville but left Gray with the suggestion to cooperate in the police investigation. When the driver of Gray's car (a Brian Deering had been stopped driving the black car with orange and red stripes the morning of the homicide) was brought in to explain his possession of Gray's car, Gray related that he could not allow Deering to be accused. He then gave and made an inculpating statement to the officers. The officers, prior to the statement, gave Gray an opportunity to again contact his attorney but Gray was unable to make this connection. With Gray being fully advised prior to making the incriminating statement, with Gray's attorney advising him to cooperate with the police, and with the officers allowing Gray to again attempt to consult with his attorney prior to his statement, the evidence supports the finding of the trial court that Gray's confession was freely and voluntarily given. Implicit in that ruling is a rejection by the trial court that Gray's confession was prompted by his allegation that his conversation with his attorney had been taped by police officials. In short, after a full hearing on the motion to suppress, the trial court found from all that evidence that Gray's statement was freely and voluntarily given. The evidence supports that ruling. \* \* \*

Opinion of March 24, 1982 in *State of Tennessee,* appellee, v. *Malcolm Gray, III, et al.,* appellants, no. 80–184–III in the Court of Criminal Appeals of Tennessee.

■ The petitioner contends that the foregoing findings of basic, primary or historical facts are not entitled to a presumption of correctness because they are "not fairly supported by the record" and because he was "otherwise denied due process of law in the State court proceeding." 28 U.S.C. § 2254(d)(8), (7). Such an allegation is sufficient to " \* \* \* trigger an inquiry as to whether one of the eight exceptions [of § 2254(d), *supra* ] are [sic] applicable. A proper resolution of such inquiry requires the district court to examine the trial record." *Loveday v. Davis,* 697 F.2d 135, 138[2] (6th Cir.1983).

■ Having examined the state record, this Court does *NOT* FIND that any of the eight exceptions to the presumption of correctness of § 2254(d), *supra,* is applicable herein; to the contrary, this Court hereby FINDS that Mr. Gray has not established the existence of any such exception; that it does not appear otherwise that such an exception exists; and that the respondents have not admitted the existence of any such exception. *See ib.,* 697 F.2d at 138[1] ("The eight exceptions to the presumption of correctness may be 'found' to exist via three methods: the applicant may establish that such exists; it shall otherwise appear that such exists; or the respondent shall admit that such exists."). Therefore, this Court hereby

ACCEPTS the findings-of-fact stated in the aforequoted opinion of the state appellate Court.[1]

### B.

Confessions (and their use against a defendant at trial) remain a proper element in law enforcement. *Rhode Island v. Innis,* 446 U.S. 291, 299–300, 100 S.Ct. 1682, 1689[2], 64 L.Ed.2d 297 (1980); *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). " * * * Indeed, far from being prohibited by the Constitution, admissions of guilt by wrong-doers, if not coerced, are inherently desirable.

■ " * * * Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions. * * * " *United States v. Washington,* 431 U.S. 181, 187, 97 S.Ct. 1814, 1818 [2–4], 52 L.Ed.2d 238 (1977), quoted with approval in *Oregon v. Elstad,* —— U.S. ——, ——, 105 S.Ct. 1285, 1291, 84 L.Ed.2d 222 (1985). Thus, only if the inculpatory statement of Mr. Gray was involuntary, and, therefore, obtained in violation of the Constitution, Fifth Amendment, could this Court grant him relief; in considering that question, the Court must give appropriate deference to the findings-of-fact made by the state-courts. *Cardwell v. Taylor,* 461 U.S. 571, 572, 103 S.Ct. 2015, 2016, 76 L.Ed.2d 333 (1983).

■ Having accepted the aforequoted findings of the state-Court, this Court CONCLUDES that Mr. Gray's privilege against compulsory self-incrimination was not violated, because his confession was given freely and voluntarily.

### C.

■ In support of his assistance-of-counsel claim, Mr. Gray relies upon the rule announced first in *Miranda v. Arizona, supra,* and refined in *Edwards v. Arizona,*

451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).[2] Such latter decision adopted a *per se* rule that, once an accused has " * * * expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Ib.,* 451 U.S. at 484–485, 101 S.Ct. at 1884–1885[3, 4].

Here, there was no violation of the rule of *Edwards;* that rule implicates a situation wherein the police initiate further interrogation of a suspect after he has requested counsel but before counsel has been provided. The holding of *Edwards* is inapplicable where, as here, the accused himself—and not a police officer—initiates the further interrogation and particularly where such occurs after the accused has actually conferred with counsel. *Wyrick v. Fields,* 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982); *United States v. Halliday,* 658 F.2d 1103, 1104–1105[1] (6th Cir. 1981), *cert. den. sub nom. Frank v. United States,* 454 U.S. 1127, 102 S.Ct. 978, 71 L.Ed.2d 115 (1981).

The relevant facts herein, as found by the state-Court and accepted by this Court, reflect that Mr. Gray initiated his further interrogation by relating to the police that he could not allow Mr. Deering to be accused of the crime being investigated. Mr. Gray's incriminating statement resulted, not from his being denied his right to the assistance of counsel, but from actually having received the assistance of counsel and having followed his lawyer's advice "to cooperate" with the police.

*Edwards, supra,* emphasized the necessity of counsel's being made available or the accused's having access to counsel prior to being questioned by the police, rather than holding that, once the accused has requested counsel, he may be interrogated there-

---

1. " * * * Section 2254(d) by its terms thus applies to factual determinations made by state courts, whether the court be a trial court or an appellate court. * * * " *Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769[3], 66 L.Ed.2d 722 (1981).

2. *Edwards* is to be applied to all cases pending on direct appeal at the time it was decided (May 18, 1981). *Shea v. Louisiana,* —— U.S. ——, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985). Mr. Gray's case was pending on direct-appeal when the decision in *Edwards* was rendered.

after only in the *presence* of counsel. *Ib.,* 658 F.2d at 1105. Similar to the situation with Mr. Halliday, the record herein reflects that Mr. Gray's decision to speak with the officers after having conferred with his counsel "was voluntary, knowing and intelligent." *Id.*

" * * * It may happen that a person makes statements to law enforcement officials that he later regrets, but the issue in such cases is not whether the statement was self-protective, but rather whether it was made voluntary." *United States v. Mendenthall,* 446 U.S. 544, 555–556, 100 S.Ct. 1870, 1878, 64 L.Ed.2d 497 (1980), *reh. den.* 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980). The petitioner, thus, is not entitled to any relief on this first ground.

## II.

For his second ground for relief, Mr. Gray maintains that the trial judge erred in admitting into evidence a shotgun which he claims had been seized by police officers in a manner which did not satisfy the demands of the Constitution, Fourth Amendment. This Court may consider such claim only if it finds that the state of Tennessee failed to provide Mr. Gray "an opportunity for full and fair litigation" thereof. *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976); as a result of this rather strict rule, " * * * [i]t will be a rare case indeed in which a federal habeas court will be able to reach the merits of a Fourth Amendment claim by a state prisoner." 17 Wright, Miller & Cooper, Federal Practice and Procedure 622, § 4263.

Mr. Gray did not file in the trial Court a pretrial motion to suppress the shotgun as evidence, *see* Rule 12(b)(3), Tenn.R.Crim.P., but he did object to its introduction into evidence contemporaneously with the time it was offered by the prosecution. The trial judge overruled such objection, ruling that the shotgun had been seized as a result of a search to which Mr. Gray had consented.

On direct-appeal, the Court of Criminal Appeals of Tennessee deemed this issue to have been waived because of the failure of the petitioner to have properly briefed it by citing authorities in support of his argument. *See* Rule 27(a)(7), Tenn.R.App.P.; *Moorman v. State,* 577 S.W.2d 473, 476[4] (Tenn.Crim.App.1978). Mr. Gray's brief on appeal raised some 36 assignments of error with less than one page—nine sentences to be exact—devoted to his Fourth-Amendment claim. Not one legal authority was cited in support of this argument; neither the Fourth Amendment, nor any other provision of the federal Constitution, was mentioned.

The petitioner urges he did not receive in the courts of Tennessee an opportunity for full and fair litigation of his Fourth-Amendment claim; the thrust of his argument is that he was denied such an opportunity because there was no evidentiary support in the record for the finding of the trial judge, that he had consented to the search which yielded the shotgun. This argument, however, goes to the merits of Mr. Gray's Fourth-Amendment claim, and the correctness or incorrectness of the state Court's ruling on the issue is irrelevant. *Dunn v. Rose,* 504 F.Supp. 1333, 1337[5] (D.C.Tenn. 1981).

The fact, that the Court of Criminal Appeals of Tennessee declined to consider on its merits Mr. Gray's Fourth-Amendment claim, does not preclude the application of the rule of *Stone v. Powell, supra.* Actual litigation of the claim in the state courts is not required. *Boyd v. Mintz,* 631 F.2d 247, 250–251 (3d Cir.1980).

The state need only have provided an *opportunity for* the full and fair litigation of the Fourth-Amendment issue, irrespective of whether the petitioner took advantage of that opportunity. *Gates v. Henderson,* 568 F.2d 830 [3], [4] (2d Cir. 1977), *cert. den.* 434 U.S. 1038, 98 S.Ct. 755, 54 L.Ed.2d 787 (1978). So long as the state accorded the petitioner an opportunity *to* litigate fully and fairly whether evidence allegedly obtained in violation of the Constitution, Fourth Amendment, should

have been excluded, then *Stone v. Powell*, precludes consideration of such issue in federal habeas corpus proceedings regardless of whether the petitioner availed himself *of* the opportunity so presented. *Lenza v. Wyrick*, 665 F.2d 804, 808 (8th Cir. 1981).

The decision, whether the state of Tennessee provided Mr. Gray an opportunity *for* the full and fair litigation of his Fourth-Amendment claim, implicates a two-fold inquiry: first, this Court must determine whether Tennessee's procedural-mechanism, in the abstract, presented the opportunity to raise a Fourth-Amendment claim; and secondly, the Court must determine also whether presentation of such claim was in fact frustrated by the state appellate Court by its application of a procedural-rule in a manner that, through no fault of the petitioner, deprived him of an opportunity *to* fully litigate his claim. *Riley v. Gray*, 674 F.2d 522, 526–527 (6th Cir.1982), *cert. den. sub nom. Shoemaker v. Riley*, 459 U.S. 948, 103 S.Ct. 266, 74 L.Ed.2d 207 (1982).

■ Clearly, Tennessee's procedural-mechanism, in the abstract, presented Mr. Gray the opportunity *to* raise his Fourth-Amendment claim: He could have filed a pretrial motion to suppress such evidence, Rule 12(b)(3), Tenn.R.Crim.P.; he had the right *to* object *to* such evidence when it was offered at trial, *see Griffin v. State*, 595 S.W.2d 96, 100[9] (Tenn.Crim.App.1980) ("In the absence of an objection to the admission of the evidence, the question of the legality of a search is foreclosed."); he was entitled to appeal his conviction and raise the adverse-ruling of the trial judge before the Court of Criminal Appeals of Tennessee, Rule 3(b), 4(a), (c), 5(b), Tenn.R. App.P.; and, lastly, Mr. Gray could have sought permission to appeal the issue to the Supreme Court of Tennessee, Rule 11(a), Tenn.R.App.P. Thus, Tennessee provided the petitioner an adequate procedural-mechanism for the litigation of his Fourth-Amendment claim.

Although Mr. Gray's opportunity to litigate the merits of his Fourth-Amendment claim in the state appellate-Court was frustrated by that Court's application of its waiver-rule, such was entirely legitimate. *Riley v. Gray, supra,* 674 F.2d at 526, n. 3. The frustration was not the product of any unreasonable or unjustified conduct on the part of the state-Court, but resulted from the fault of the petitioner who (through his counsel) did not abide by that Court's reasonable rule regarding the briefing of issues he had chosen to raise.[3] " * * * Under such circumstances it cannot be held that petitioner was denied the opportunity to fully and fairly litigate the issue. * * " *Lenza v. Wyrick, supra,* 665 F.2d at 809 (where the state appellate-Court refused also to consider a Fourth-Amendment issue because of improper briefing).

This Court hereby FINDS that the state of Tennessee afforded Mr. Gray an opportunity *for* the full and fair litigation of his Fourth-Amendment claim. Accordingly, the Court CONCLUDES that it cannot consider such claim herein. *Stone v. Powell, supra.*

### III.

Upon a review of the state-court proceedings and of the expanded record, this Court CONCLUDES that an evidentiary-hearing is not required herein; therefore, it will make such disposition of the petition herein as justice requires. Rule 8(a), 28 U.S.C. fol. § 2254. Since Mr. Gray is not entitled to any relief, judgment will enter, denying him all relief herein. Rule 58(1), F.R.Civ.P.

Should the applicant give timely notice of an appeal herein, he is authorized to proceed thereon in forma pauperis. Rule 24(a), F.R.App.P. Any such notice will be treated also as an application for a certificate of probable cause, Rule 22(b), F.R. App.P., which certificate shall ISSUE so that the Court of Appeals will have an

---

**3.** Rule 27(a)(7), Tenn.R.App.P., corresponds with Rule 34.1(i), U.S.Sup.Ct.R., which requires briefs to "cit[e] the authorities and statutes relied upon" and Rule 28(a)(4), F.R.App.P., requiring briefs to include "citations to the authorities, statutes and parts of the record relied on."

opportunity to determine whether its mandate has been honored meticulously by this Court. *Id.*