RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0222p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

JAKE PAUL HEINEY,

　　　　　　　*Petitioner-Appellant*,

　　*v.*

DONNA MOORE, Director, Lucas County Adult
Probation Department; MOLLY HICKS, Probation
Officer, Lucas County Adult Probation Department,

　　　　　　　*Respondents-Appellees*.

No. 24-3135

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Toledo.
No. 3:21-cv-00501—Dan A. Polster, District Judge.

Argued:  May 7, 2025

Decided and Filed:  August 13, 2025

Before:  CLAY, READLER, and DAVIS, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:**  Steven J. Alagna, Kyle Lorey, WASHINGTON UNIVERSITY, St. Louis, Missouri,
for Appellant.  Evy M. Jarrett, LUCAS COUNTY PROSECUTOR'S OFFICE, Toledo, Ohio, for
Appellees.  **ON BRIEF:**  Steven J. Alagna, Kyle Lorey, Charlotte Morse, Colton Woodson,
WASHINGTON UNIVERSITY, St. Louis, Missouri, for Appellant.  Evy M. Jarrett, LUCAS
COUNTY PROSECUTOR'S OFFICE, Toledo, Ohio, for Appellees.

　　　DAVIS, J., delivered the opinion of the court in which CLAY and READLER, JJ.,
concurred.  READLER, J. (pp. 10–12), delivered a separate concurring opinion.

---

**OPINION**

---

DAVIS, Circuit Judge.  Jake Paul Heiney appeals the district court's denial of his petition for habeas corpus.  A jury convicted Heiney of two counts of gross sexual imposition and one count of tampering with records.  After exhausting his state appellate and post-conviction remedies, he sought federal habeas relief under 28 U.S.C. § 2254, challenging, among other things, the sufficiency of the evidence.  Heiney moved to expand the record to include all trial exhibits admitted during his state proceedings.  The district court denied both his motion and his habeas petition.  So Heiney appealed.

This court granted a limited certificate of appealability ("COA") to consider a single issue: whether the district court adjudicated Heiney's petition on an incomplete record.  Heiney now asks us to vacate the denial of his habeas petition, reverse the order denying his motion to expand the record, and remand for further proceedings.  But because the district court appropriately considered the state court record concerning Heiney's claims, we see no error in its denial of Heiney's motion. We therefore AFFIRM the district court's order denying the motion to expand the record.

**I.**

Heiney is an orthopedic surgeon who operated a private practice with offices in Sylvania, Ohio, and Lambertville, Michigan.  In 2015, two patients—M.S. and K.O.—accused him of inappropriate conduct during medical examinations.  Based on those allegations and supporting testimony from peer physicians and investigators, the State charged Heiney with two counts of gross sexual imposition and one count of tampering with records.

At trial, the State introduced fifteen exhibits.  Relevant to the sexual-imposition charges were video and audio recordings of Heiney's interviews with law enforcement and the State Medical Board.  And relevant to the tampering charge were K.O.'s medical records and audit logs. The trial court admitted these exhibits into evidence, and the jury considered them during deliberations.  The jury returned guilty verdicts on all counts.  The trial court then sentenced

Heiney to 180 days in jail, 90 days in county work release, and 4 years of community control.  It also imposed a $5,000 fine and designated him a tier 1 sex offender.

Heiney appealed.  He challenged the sufficiency of the evidence, arguing the State had not proven (1) sexual gratification—an element of gross sexual imposition; and (2) intent to defraud—an element of tampering.  The Ohio Court of Appeals ("OCOA") affirmed, holding that a rational juror could infer both elements from the State's evidence.  *State v. Heiney*, 117 N.E.3d 1034, 1059 (Ohio Ct. App. 2018).  The Ohio Supreme Court declined further review.

Heiney filed a federal habeas petition in which he raised four claims: (1) insufficiency of the evidence, (2) an erroneous jury instruction, (3) ineffective assistance of counsel, and (4) actual innocence.  He also moved to supplement the record with 37 additional documents, including civil litigation materials and expert affidavits.  The magistrate judge granted the motion in part, allowing documents already filed in state court and an affidavit from another orthopedic doctor.  At the same time, the magistrate judge disallowed duplicative or procedurally barred materials, which swept in some of the trial exhibits at issue.

Heiney later filed a separate motion to include the state trial exhibits, emphasizing their relevance to his sufficiency claim.  But the district court denied the motion, concluding that the magistrate judge had already reviewed the relevant exhibits when preparing the Report and Recommendation ("R&R").  It also denied Heiney's petition on the merits.  In short, the district court agreed with the magistrate judge's conclusion that the OCOA's sufficiency-of-the-evidence analysis was reasonable and that the state court record—specifically, the trial transcript—adequately supported the verdict.

Unsatisfied with this result, Heiney moved to amend the judgment, arguing that the absence of trial exhibits deprived the federal court of the complete record necessary for a proper analysis on habeas review.  Again, the district court denied the motion.  Heiney sought a COA on the first three grounds raised in his § 2254 petition.  Relevant here, the first ground of his petition was that the state court violated his due process rights and right to a fair trial when it denied his claim that the evidence at trial was insufficient to support his convictions.  A single-judge panel of this court granted a limited COA to determine "whether the district court adjudicated [Heiney's] petition on

an incomplete record." (Order Granting Certificate of Appealability, R. 58, PageID 8228). The answer is "no."

## II.

As an initial matter, the Supreme Court has held that in federal habeas proceedings, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). To that end, the general rule in our circuit is that a district court must "make a review of the entire state court trial transcript in habeas cases." *Adams v. Holland*, 330 F.3d 398, 406 (6th Cir. 2003) (vacating denial of a § 2254 petition where the record omitted the transcript of closing arguments from trial). And if the record omits substantial parts of the transcript, this court should remand the case so that the district court can consider the full record in evaluating the habeas petition. *Id.* That said, we do not impose a blanket rule requiring district courts in habeas proceedings to read every word of the state court trial transcript. *Nash v. Eberlin*, 437 F.3d 519, 524–25 (6th Cir. 2006). Rather, district courts must review the "portions of th[e] transcript that are 'relevant to the petitioner's . . . claim.'" *Kraus v. Taylor*, 715 F.3d 589, 595 (6th Cir. 2013) (quoting *Nash*, 437 F.3d at 524). Heiney argues that because the trial exhibits were not included in the district court record, he is entitled to remand under *Adams*. Since the question Heiney raises does not require us to consider the merits of his petition, we review the district court's legal conclusions de novo and its factual findings for clear error. *See Jeffries v. Morgan*, 522 F.3d 640, 644 (6th Cir. 2008); *see also Hopson v. Horton*, 838 F. App'x 147, 151 (6th Cir. 2020).

To start, we have never held that a district court must obtain and review trial exhibits in a habeas case. Instead, we have established only the need for courts to have trial transcripts before them. *See Hopson*, 838 F. App'x at 157–58 (observing that extending *Adams* to encompass trial exhibits would be an expansion of the rule). Although *Jeffries* refers at times to the "entire record," its context makes clear that the problem there was the district court's failure to review the trial transcript—an omission that rendered the record incomplete under *Adams*. 522 F.3d at 644–45. The circumstances here do not require us to resolve the question of whether *Adams*'s reasoning should be extended to trial exhibits because no remand is necessary on these facts.

As we have noted, the *Adams* rule is not absolute. *See Nash*, 437 F.3d at 525 ("We note that *Loveday v. Davis*, 697 F.2d 135 (6th Cir. 1983), rejected a strict rule requiring a district court to read the state-court trial transcript in every habeas proceeding."). And we elaborated in *Clark v. Waller* that there is no need for the district court to examine the trial record if "(1) the state court opinions summarize the trial testimony or relevant facts"; and (2) the petitioner does not dispute the accuracy of those summaries but rather takes issue "with the conclusions the state court drew from the evidence." 490 F.3d 551, 555–56 (6th Cir. 2007). Stated otherwise, if the district court has failed to review the entire record and a party either (a) disputes the factual account given by the state appellate court or (b) points to gaps in the relevant evidence referenced in the state appellate opinion, then the case should be remanded for the federal district court to review the trial transcript. *Id.* at 555.

Here, the district court had Heiney's trial transcript and other materials it had permitted into the record as items the state courts had considered. But even assuming it did not review those materials in their entirety or lacked the additional exhibits Heiney sought, no remand is necessary because Heiney has neither identified any factual inaccuracy in the state court's summary nor pointed to a gap in the evidence on which it relied. As such, even if trial exhibits were deemed to fall within the scope of *Adams*, the district court had the relevant record evidence necessary to evaluate Heiney's claims. So neither *Clark* exception applies, and the record does not compel us to extend *Adams* any further.

## A. Dispute of OCOA's Factual Summaries

Begin with the first type of exception under *Clark*—dispute of the OCOA's factual summary. To trigger remand under this exception, a petitioner must do more than challenge how the state court interpreted the facts or drew inferences. *See id.* Rather, the petitioner must identify a specific factual inaccuracy in the state court's summary. *See id.* Merely "tak[ing] issue with the state court's factual conclusions" will not suffice. *Id.*

Heiney attempts to characterize his objections to the R&R as implicit disputes with the OCOA's factual account. But his objections fall short. The only example he provides is his conclusory assertion that the OCOA's "statements are not an accurate reflection of the record as

demonstrated through clear and convincing evidence." (Objection to R&R, R. 47, PageID 8020). His clarification that his disagreement is with "the report's conclusions," not with the factual summary itself, only underscores the deficiency of his argument. *Id.* For this is precisely the type of challenge that does not hold water under *Clark*.

Even more damaging to Heiney's insufficient-record claim, the conclusions he contests are about the state court's interpretations of state law—such as whether the evidence proved intent or gratification—not about any particular fact the OCOA recited. He does not point to any misstatement of testimony, factual omission, or erroneous statement contained in the summary of the record. In sum, because he fails to raise a specific challenge to OCOA's factual summary, Heiney cannot meet the first exception outlined in *Clark*. *See* 490 F.3d at 555.

## B. Evidentiary Gap

The second *Clark* exception applies when a petitioner relies on relevant evidence not addressed in the state court's opinion—thereby filling a gap in the record. Heiney argues that the trial exhibits at issue are relevant portions of the state record that would support his sufficiency-of-the-evidence claim if considered by the district court. However, the pertinent question is not simply whether the exhibits were "relevant," but also whether they would have closed a gap in the record for which the district court failed to account. On that point, the record is clear: the district court had access to all the materials necessary to adjudicate his claims, including evidence covering the same ground as the trial exhibits Heiney sought to add.

Begin with the gross-sexual-imposition charge. According to Heiney, Trial Exhibits 6, 12, and 15 undermine the State's contention that he acted with the purpose of sexual gratification—an element required under Ohio Rev. Code § 2907.05. In his view, the OCOA inferred a purpose of sexual gratification from his "personality." This is a problem, says Heiney, because the court could have derived such a purpose only from out-of-court statements contained in Trial Exhibit 6 (his interview with the State Medical Board) and Trial Exhibit 12 (his interview with law enforcement). As for Trial Exhibit 15—K.O.'s medical records—Heiney argues that the records show that K.O. consented to treatment consistent with standard medical judgment. So they undermine another physician's testimony that Heiney acted with improper intent.

These arguments, however, fail to grapple with the appellate court's reasoning.  Beginning with Exhibits 6 and 12, the OCOA did not indicate that a juror could infer Heiney's intent solely— or even primarily—from his interviews.  Instead, it pointed to multiple pieces of trial evidence which, if credited by the jury, established Heiney's intent.  *See Heiney*, 117 N.E.3d at 1058.  Such evidence included testimony from three other witnesses who described similar conduct by Heiney.  For example, when the OCOA noted that intent could be inferred "from Heiney himself," it relied on M.S.'s testimony—not merely the interview recordings.  *Id.*  Thus, contrary to Heiney's framing, the OCOA did not rest its conclusion on vague impressions of his "personality."  In fact, the court stated only that "a nefarious purpose may be inferred from Heiney himself."  *Id.*  It did not reference his personality, as Heiney now suggests.  And Heiney never explains what aspect of his personality he believes the court relied on, or how that inference is probative of his intent.  It was the divergence between his stated practices and the alleged conduct—not any abstract character trait—that the jury could reasonably consider in evaluating intent.  And because the nub of this discrepancy was a part of the record before the district court, the district court could evaluate the sufficiency-of-the-evidence claim.

As for Exhibit 15, Heiney argues that K.O.'s consent to treatment undermines another physician's testimony.  But that argument does not comport with *Clark*, which requires a challenge to the factual summary or reliance on overlooked material evidence—not a general effort to rebut testimony already considered at trial.  The OCOA permissibly stood on the testimony and trial evidence admitted before the jury.  After all, a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Jackson v. Virginia*, 443 U.S. 307, 326 (1979).

The same holds true for the tampering-with-records charge, which was based on edits Heiney made to K.O.'s electronic medical record.  The key issue for this charge was whether Heiney acted with a purpose to defraud.  Ohio Rev. Code Ann. § 2913.42.  Heiney argues that three exhibits—Trial Exhibit 11 (the audit log), Exhibit 14 (a side-by-side comparison of K.O.'s progress note before and after the edits), and Exhibit 15 (K.O.'s full medical record)—would show that he lacked fraudulent intent.  But the record belies this assertion.  The district court had Trial

Exhibit 14 as part of the record because it was discussed in the OCOA's opinion. *See Heiney*, 117 N.E.3d at 1049. Relying on Exhibit 14 and the OCOA's analysis, the district court concluded that the record supported the tampering conviction—specifically the element of intent. Heiney does not explain why Exhibit 14, which provides a direct comparison of the altered medical note, is inadequate for that determination. Nor does he show how Exhibits 11 and 15 could materially affect the analysis.

All in all, Heiney has not demonstrated any material gaps in evidence in support of his claims. The trial exhibits he references were either directly reviewed by the district court or their substance was captured in the trial transcript or state appellate opinion. Because the district court had a complete and accurate basis for evaluating his petition, his circumstances remain outside of *Clark*'s limited exceptions.

### C. Other Purported Grounds for Error

Heiney also claims that that the district court mishandled his motion to include trial exhibits, by allegedly conflating or confusing it with an earlier motion to supplement the record. But the district court neither mixed up nor misunderstood his requests. Rather, it expressly satisfied itself that the magistrate judge had reviewed all relevant parts of the record, including those exhibits necessary to assess Heiney's claims. The magistrate judge's R&R thoroughly analyzed both the trial transcript and the key exhibits submitted with Heiney's traverse—including the medical records and investigative interviews. The magistrate judge also granted in part Heiney's earlier motion to supplement the record, allowing many of these exhibits into the habeas record before issuing the R&R.

Simply put, this is not a case where the district court conducted a skeletal or one-sided review. Quite the opposite—the district court considered the trial transcript, accepted and reviewed relevant trial exhibits, and ultimately found no legal error in the state court's adjudication. This record review was not only adequate under *Adams*, but thorough. Under these circumstances, the district court did exactly what *Adams* and *Clark* require: it reviewed the trial transcripts and the state court's opinion, which relied on both testimony and admitted evidence.

With this understanding of the proceedings, we conclude that the district court did not err in adjudicating Heiney's habeas petition without adding the remaining trial exhibits into the record. The district court had sufficient material to review the petition on its merits. Importantly, federal courts owe substantial deference to state court findings under the Antiterrorism and Effective Death Penalty Act. *See* 28 U.S.C. § 2254(d). Heiney offers no developed argument—let alone clear and convincing evidence—to rebut the presumption that the state court's factual findings were correct. Nor did he preserve any meaningful challenge to those findings. The magistrate judge properly determined that Heiney waived any such challenge by failing to articulate it with clarity and support. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that perfunctory arguments, unsupported by legal reasoning or analysis, are deemed waived). Ultimately, the district court acted well within its discretion in denying Heiney's motion to expand the record.

**III.**

We AFFIRM.

———————————

**CONCURRENCE**

———————————

READLER, Circuit Judge, concurring. No binding precedent applies the rule in *Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003), to trial exhibits. *See Hopson v. Horton*, 838 F. App'x 147, 157 (6th Cir. 2020) (noting as much). And, as the majority opinion correctly explains, even if the *Adams* rule did apply in that setting, this case falls within the exception to that rule recognized in *Clark v. Waller*, 490 F.3d 551 (6th Cir. 2007). Accordingly, I fully concur in that opinion.

Although unnecessary to resolve today's case, it bears noting that, as an original matter, *Adams* strikes me as misguided in the way it purports to police our colleagues in the district court. *Adams* tells us to penalize a district court if, in performing habeas review of a state court proceeding, the court does not "review" the "*entire* state court trial transcript." *Adams*, 330 F.3d at 406 (emphasis added). The authority for imposing this onerous rule was murky, to say the least. The Antiterrorism and Effective Death Penalty Act, which controls review of habeas corpus petitions in federal court, does not require as much. As our sister circuits have recognized, nowhere in 28 U.S.C. § 2254 did Congress specify that a district court must review the complete state trial transcript in ruling on a state prisoner's claim. *See, e.g.*, *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986) ("There is nothing in the statute or in the Habeas Corpus Rules that requires a district court to review the state court record in its entirety."); *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990) (similar).

Nor does Supreme Court precedent. *Adams* seems to tie its rule to *Townsend v. Sain*, 372 U.S. 293 (1963). *See Adams*, 330 F.3d at 406 (citing *Townsend*, 372 U.S. at 319). But *Townsend* does not impose a whole-transcript rule. At most, the cited passage yields the unsurprising proposition that district courts "clearly ha[ve] the *power* to compel production of the complete state-court record." *Townsend*, 372 U.S. at 319 (emphasis added). In explaining why district courts have this authority, the Supreme Court noted that "ordinarily," the state-court record, "including the transcript of testimony," "is indispensable to determining whether" the prisoner received "full and fair" proceedings in state court. *Id.* (citation modified). Access to that transcript, including trial testimony, in other words, affords the district court the opportunity, if it so chooses,

to review the testimony in state court in evaluating that court's actions under the deferential AEDPA standards. *See id.*

Somehow, *Adams* transformed this grant of "power" into an obligation. *Adams*, 330 F.3d at 406. Its strained logic should be obvious. The permissive authority in *Townsend* was entrusted to the district court's judgment. *See Townsend*, 372 U.S. at 319. The mandatory duty in *Adams* bypasses that judgment, dictating that the district court exercise this power in every case. *See Adams*, 330 F.3d at 406; *see also United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) (noting that an official "vested" with a "power" necessarily "exercises discretion as to whether or not" to use that power); *Lopez v. Davis*, 531 U.S. 230, 241 (2001) (noting that "mandatory" language like "shall" creates "discretionless obligations" while "permissive" language like "may" signals a "grant of discretion"). Indeed, in a different context, *Townsend* itself highlighted that the "exercise of [a] power" given to the district court is generally not "mandatory" absent further instructions making it so. *See Townsend*, 372 U.S. at 312 (addressing the district courts' power to order an evidentiary hearing). To cement the point by analogy, consider Congress's "Power" to "grant Letters of Marque," documents which authorize sea captains to go privateering on a nation's behalf. *See* U.S. CONST. art. I, § 8, cl. 11; *Letters of Marque*, Black's Law Dictionary (12th ed. 2024). Congress has not used this power since the War of 1812. C. Kevin Marshall, Comment, *Putting Privateers in Their Place*, 64 U. Chi. L. Rev. 953, 954 (1997). Does this mean Congress has violated that provision for the last 215 years? Of course not. Again, inherent in any power is discretion over whether to exercise it.

So too here, where a district court's power to review a transcript is properly understood to vest the court with discretion whether to take that step, and, if so, to what lengths. *Townsend*, 372 U.S. at 319. Most of our sister circuits understandably recognize this discretion. *See Dillard*, 780 F.2d at 513 ("Whether it is necessary to examine all of the state court proceedings is a decision left to the discretion of the district court judge."); *Mandeville v. Smeal*, 578 F. App'x 149, 149–50 (3d Cir. 2014) ("[T]he District Court has discretion in determining whether the transcripts provided are sufficient."); *Armontrout*, 897 F.2d at 333 (rejecting obligation "to review the entire state court record"); *cf. United States ex rel. Jones v. Franzen*, 676 F.2d 261, 264 (7th Cir. 1982) (requiring district courts to "review the state court trial record" but omitting any need for completeness). *But*

*see Jones v. Wood*, 114 F.3d 1002, 1013 (9th Cir. 1997) (requiring "thorough review of the complete state court record").

This discretionary approach is also consistent with our standard of review here. Heiney's argument about the record's sufficiency does not go to the merits of his habeas petition. Accordingly, we apply "the traditional standard" of review, rather than AEDPA deference. *Jeffries v. Morgan*, 522 F.3d 640, 644 (6th Cir. 2008). Under that rubric, legal questions get de novo review, and factual ones get clear error review. *Id.* But case-management decisions—like what is needed in the evidentiary record—are reviewed for abuse of discretion. *Black v. Carpenter*, 866 F.3d 734, 742 (6th Cir. 2017) (deciding that no evidentiary hearing was needed to rule on petition); *Robinson v. Howes*, 663 F.3d 819, 823–24 (6th Cir. 2011) (deciding that evidentiary hearing was needed); *cf. Townsend*, 372 U.S. at 319 (highlighting the unique role of "the federal district judges" in "giv[ing] practical form to" the Supreme Court's reasoning about when evidentiary hearings are needed). Whether a district court can resolve a habeas petition without reviewing the entire state trial transcript falls safely with this same exercise of judgment. Equally true, it seems disrespectful on our part to burden the district court, a busier tribunal than ours, to commit its limited resources to procedural tasks it has deemed unproductive.

In an appropriate case, I would recommend that we abandon *Adams*, realigning ourselves with the proper, deferential standard of review in this context as well as our sister circuits' adherence to that norm.